IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEISHA CAPPEL, ALFONSO JONES** | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  23-155 |
| | : | |
| **ASTON TOWNSHIP FIRE DEPARTMENT, TOWNSHIP OF ASTON, DELAWARE COUNTY PENNSYLVANIA, PROSPECT CROZER, LLC, PROSPECT CCMC, LLC, CHIEF MICHAEL EVANS, KENNY DAWSON, EOIN MARSHALL, AARON KISELA** | : : : : : : : : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                              February 10, 2025

      This case involves the death of a woman, Tamika Jones.  Ms. Jones's family called 911 for help because she was experiencing significant and concerning COVID-19 symptoms.  Two teams of paramedics were sent, including an advanced team, but only one junior paramedic evaluated Ms. Jones.  After apparently convincing Ms. Jones not to go to the hospital, the paramedics left the scene and inaccurately documented the encounter.  Ms. Jones died the next day.  Ms. Jones's sister, Keisha Cappel — also the executor of her estate — and Ms. Jones's father, Alfonso Jones, brought this suit alleging a variety of claims related to Ms. Jones's death.

      The claims that survived motions to dismiss included wrongful death and survival actions predicated on the ADA, the Rehabilitation Act, and intentional infliction of emotional distress.  Before us now is a proposed settlement as to the claims against the Aston Township Fire Department ("ATFD") defendants.  Because the proposed settlement would resolve claims brought on behalf of Ms. Jones's estate, Pennsylvania law requires us to review it.  After analyzing the adequacy of the settlement amount, the reasonableness of the proceeds allocation, and the reasonableness of attorneys' fees and costs, we approve the proposed settlement

agreement.

I.      **Factual Background**[1]

On the evening of January 22, 2021, while at the home of her mother and father — where she was living to help her mother who was battling cancer — Tamika Jones was struggling to breathe and could not walk.  DI 65 ¶¶ 31-34.  Five days earlier, Ms. Jones's father, Mr. Jones, had been hospitalized for symptoms related to COVID-19.  *Id.*  Ms. Jones's sister, Keisha Cappel, tested Ms. Jones's blood oxygen level, which was detected to be very low.  *Id.* ¶ 35.  Ms. Cappel called her mother-in-law, a registered nurse, who instructed her to call 911 and that Ms. Jones "should be taken to the hospital."  *Id.*  Ms. Cappel "told the Delaware County Pennsylvania's 911 center of all of [Ms. Jones's] symptoms," and the "County dispatched a unit with a full paramedic on board, or an EMT-P, who was trained to provide Advanced Life Support."  *Id.* ¶ 36.  The Aston Township Fire Department also sent a Basic Life Support unit to Ms. Jones, which was staffed by two EMT-Bs, Eoin Marshall and Aaron Kisela.  *Id.* ¶ 38.

The Aston Township Fire Department unit arrived first, and Marshall, a new EMT-B, went inside the home.  *Id.* ¶ 39.  According to the complaint, Marshall "consciously disregarded two blood oxygen readings [of Ms. Jones] which Marshall himself stated would be nearly fatal" and "instead of investigating further by checking vital signs, [] acted with deliberate indifference by halting his evaluation."  *Id.* ¶ 41.  Marshall purportedly told Ms. Jones "I can take you to the hospital, but they will just bring you back home" and added "I'd stay here. They are really wanting people to stay home. Your best chance is to stay here."  *Id.* ¶ 47.  Before leaving Ms.

---

[1] In this section, we summarize allegations in the second amended complaint.  DI 65.  We understand that, as part of the settlement, the ATFD defendants denied any wrongdoing about the care they provided to Ms. Jones.  DI 95 ¶ 18.

2

Jones, Marshall did not get a signed refusal form or contact Medical Command, which is supposed to be "the final sign-off in deciding not to transport a patient." *Id.* ¶¶ 49, 52. Meanwhile, Kisela, the more experienced EMT-B, "waived off" the Advanced Life Support unit. *Id.* ¶ 44. The incident report completed by Marshall and Kisela indicated "No Patient Assessed." *Id.* ¶ 54. Ms. Jones died the next day. *Id.* ¶¶ 56-57.

Following motions to dismiss, we allowed wrongful death and survival action claims to proceed under the ADA, the Rehabilitation Act, and for intentional infliction of emotional distress. DI 62 at 42-43. Eventually, the Township of Aston and the Prospect defendants filed separate motions for summary judgment. DI 89; DI 90. Soon after, all parties stipulated to dismissal of the Township of Aston, and it was dismissed from the case. DI 91; DI 92. Then, before we ruled on the Prospect defendants' motion for summary judgment, Ms. Cappel and Mr. Jones filed this motion for settlement as to the Aston Township Fire Department defendants. DI 95. The Prospect defendants told us that they did not oppose the motion but wanted "to ensure they are not prejudiced by [the settlement]." DI 96 at 1. They requested that "the ATFD defendants [] remain in the case for purposes of potential apportionment at the time of trial" due to their joint tortfeasor status. *Id.*

We scheduled oral argument on the motions for January 27, 2025. On January 15, 2025, Prospect filed a suggestion of bankruptcy, DI 99, so we stayed the case as to the Prospect defendants, DI 100. We ordered the remaining parties to respond to Prospect's concerns about the proposed settlement, DI 100, and they agreed that "the ATFD Defendants [will] remain a party" for the purposes of apportionment, DI 101. That leaves us with this motion for settlement as to the Aston Township Fire Department defendants, unopposed by the Prospect defendants,

3

which we approve for the reasons below.

**II.     Legal Analysis**

Pennsylvania's Probate, Estates, and Fiduciaries Code requires court approval of any settlement of claims brought on behalf of an estate. See 20 PA. CONS. STAT. § 3323(a).  This includes survival actions.  *In re Estate of Merryman*, 669 A.2d 1059, 1060 n.1 (Pa. Commw. Ct. 1995).  And if there is a single settlement amount "for both a wrongful death claim and a survival action, the court must approve the apportionment of the amount allotted to the survival claim." *Id.*  Recovery in a wrongful death claim is to "compensate[] [] individual members of the decedent's family for the pecuniary loss sustained by the death of the decedent," whereas survival actions "are brought by the administrator of the estate to benefit the decedent's estate." *Id.* at 1061.  In short, the two actions "are designed to compensate two different categories of claimants: the spouse and/or members of the decedent's family, on the one hand, and on the other, the decedent through the legal representative of his or her estate." *Id.*  Proceeds from survival actions "are divided among the heirs of the decedent." *Smith v. Sandals Resorts Int'l, Ltd.*, 709 F. Supp. 2d 350, 358 (E.D. Pa. 2010).  In addition to serving different purposes, the proceeds of the two actions receive different economic treatment.  Notably, damages in a survival action may be subject to inheritance or estate taxes, while damages in a wrongful death action may be subject to income taxes. *Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *5 (E.D. Pa. Jan. 31, 2024).

Pennsylvania law requires us to evaluate survival actions "to protect the estate, as well as the creditors and beneficiaries thereof." *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990).  Review is "particularly necessary" when "only a small portion of the settlement would be

paid to the decedent's estate in settlement of the survival action." *Id.*  We review the adequacy of the settlement amount and the reasonableness of the proposed allocation of proceeds, as well as the reasonableness of attorneys' fees, and costs.  *Boykin*, 2024 WL 387638, at *3.

### A.    Adequacy of Settlement Amount

We first analyze whether the settlement is adequate, which requires us to determine whether it is "fair and reasonable under the circumstances," based on our "independent judgment on the whole case." *Krause v. B & O R.R.*, 33 Pa. D. & C.3d 458, 467 (Pa. Ct. Comm. Pl. 1983). The settlement is for $950,000.00, DI 95 at 3, which is a significant sum of money that seems commensurate with the severity of the allegations.  Counsel tells us that the amount "is sufficient to compensate the wrongful death beneficiary for the damages he sustained as a result of the loss of his daughter."  DI 95 at 3-4.

We also know that, as part of the settlement, the "ATFD Defendants have denied any wrongdoing about the care they provided to the Decedent." *Id.* at 4.  With that context, the settlement seems a preferable option to trial, which would have an "uncertain outcome" and would only increase legal fees. *Id.*  Because we lack the full context that counsel possesses, we give "considerable weight to the consensus of parties represented by counsel because the lawyers and parties are closer to the case and have a better handle on the risks and upsides of the litigation." *Carter v. Wellpath LLC*, No. 22-cv-01050, 2023 WL 6323095, at *1 (E.D. Pa. Sept. 28, 2023) (quotations omitted).  Accordingly, we find the settlement amount of $950,000.00 to be adequate.

### B.    Allocation of Proceeds

Next, we evaluate the allocation of proceeds.  We must evaluate survival actions "to

5

protect the estate, as well as the creditors and beneficiaries thereof." *Moore*, 580 A.2d at 1141. Our review is "particularly necessary" when "only a small portion of the settlement would be paid to the decedent's estate in settlement of the survival action." *Id.* The proposed allocation here gives of 70% to the settlement proceeds (after counsel fees and expenses) to the wrongful death claim and 30% of the settlement proceeds to the survival claim. DI 95 at 3.

      We find this allocation to be appropriate. First, counsel informs us that Mr. Jones is the only person entitled to the proceeds of both the wrongful death claim and the survival claim. *Id.* at 2. He is entitled to the wrongful death claim proceeds under 42 PA. CONS. STAT. §8301(b) and entitled to the survival claim proceeds because Ms. Jones died without a will and he is the sole beneficiary of her estate, DI 95 at 2. The executor of Ms. Jones's estate does not oppose the settlement. DI 95 at 5. Second, Mr. Jones's loss is significant — "Ms. Jones left her job and moved in with her parents to help care for them full-time. She provided support to a foster child that gave Mr. Jones income that is now gone. Further, Mr. Jones remains grief stricken at the loss of his daily caregiver, his daughter." DI 103 at 3. In short, he "has suffered a pecuniary loss of the value of [Ms. Jones's] services; namely, the services of society, companionship, comfort, and domestic support," DI 95 at 4, losses for which he is permitted to recover, *Rettger v. UPMC Shadyside*, 991 A.2d 915, 932 (Pa. Super. Ct. 2010). These considerations favor allocating a significant portion of the proceeds to the wrongful death claim: the beneficiary of both claims is the same, he prefers the proceeds be allocated to the wrongful death claim, and the executor of the estate does not object to that allocation. Accordingly, the proposed settlement adequately protects the estate and its beneficiary.

      Next, we must consider creditors of the estate. Counsel tells us that "[n]o claims have

been filed against the Estate of Tamika Jones and [p]laintiffs are unaware of any liens." DI 95 at 3. This assuages concerns that creditors would be unfairly excluded from the proceeds of the survival action. And in any event, "Pennsylvania policy favors wrongful death beneficiaries over estate beneficiaries." *Smith v. Sandals Resorts Int'l., Ltd.*, 709 F. Supp 2d 350, 359 (E.D. Pa. 2010). We acknowledge that wrongful death claim proceeds and survival claim proceeds may face different tax consequences. *Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *5 (E.D. Pa. Jan. 31, 2024). For this factor, courts consider whether the Pennsylvania Department of Revenue objects to the settlement allocation. *Id.* at *6 (collecting cases). Here, the Pennsylvania Department of Revenue does not object to the 70/30 split between the wrongful death and survival actions.[2] DI 105-2. We find that significant. Accordingly, we find that the proposed allocation of proceeds is reasonable.

### C. Attorneys' Fees & Costs

Finally, we must determine whether the attorneys' fees are reasonable under the circumstances. In general, courts are reluctant to disturb contingency fee arrangements "freely entered into by knowledgeable and competent parties." *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215 (3d Cir. 1999). The contingency fee agreements are attached to the motion for settlement, which seem to clearly lay out the terms of the agreement. DI 95-2 at 1-8. And they appear appropriately signed by Mr. Jones and Ms. Cappel. *Id.* at 3-4, 8. We see no evidence that the agreements were not freely entered into, or that Mr. Jones or Ms. Cappel lacked knowledge or competency such that they could not enter into the agreements.

---

[2] The first settlement proposal included a 100/0 split, to which the Department of Revenue objected. DI 105-2.

Nevertheless, we still review the agreement for reasonableness. The contingency fee agreement distributes 33.3% of sums recovered after costs to counsel, totaling a fee of $303,504.96. DI 95 at 3. Up to a 40% contingency fee is generally considered within the range of reasonableness. *Hammonds v. Luzerne Cnty.*, No. 19-2199, 2020 WL 5517496, at *2 (M.D. Pa. Sept. 14, 2020) (collecting cases). And 33.3% seems especially fair under the circumstances. This settlement followed over a year and a half of litigation, including motions to dismiss, significant discovery, and motions for summary judgment. DI 1, 33, 34, 75, 84, 89, 90. Because counsel certainly expended significant efforts to get this case to where it is, and the requested percentage is within the range of reasonableness, we find the fees to be appropriate.

Costs amount to $30,288.00. DI 95-3. The contingency fee agreement makes clear that plaintiffs would be responsible for costs. DI 95-2 at 1-8. As discussed above, we see no reason to doubt that Mr. Jones and Ms. Cappel knew this when signing the agreement. The costs accumulated are significant, but the detailed breakdown reflects reasonable and foreseeable expenses for a matter of this magnitude. DI 95-3. A sizable portion of the costs stemmed from a mediation retainer and discovery processing, both known to be costly. *Id.* We requested supplementary briefing on the legal fees to Robson & Robson to evaluate whether those costs were reasonable. DI 102. Counsel provided itemized receipts for Robson & Robson's legal work, which show that the firm did both substantive and procedural work for the case. DI 103. We see no reason to second-guess those fees. Accordingly, we find the costs to be reasonable.

### III.     Conclusion

Following our review of the proposed settlement agreement, as required by Pennsylvania's Probate, Estates, and Fiduciaries Code, we find the proposed settlement amount

to be adequate, the allocation of proceeds to be reasonable, and the attorneys' fees and costs to be reasonable. Accordingly, we approve the proposed settlement agreement between the estate of Ms. Jones — brought by Ms. Cappel —, Mr. Jones, and the Aston Township Fire Department defendants.